H. Arnold Jackson v. Commissioner.
H. Jackson v. Commissioner
Docket No. 34429.
United States Tax Court
1952 Tax Ct. Memo LEXIS 88; 11 T.C.M. (CCH) 939; T.C.M. (RIA) 52277; September 17, 1952
Russell W. Jackson, Esq., for the petitioner. John A. Clark, Esq., for the respondent. MURDOCK Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency of $9,063.73 in the income tax of the petitioner for 1947. The principal issue in the case was whether the owning, training, racing and breeding of harness race horses was a business, the losses of which were deductible under section 23 (e) (1), or was a hobby. The Commissioner has conceded that that operation was a business and the loss is deductible. The only issue remaining for decision is whether three horses and a cart, sold at profits in 1947, were property used in the trade or business within the meaning *89 of section 117 (j), so that the gains should be treated as gains from the sale of capital assets held for more than six months. Findings of Fact The petitioner filed his individual income tax return for 1947 with the collector of internal revenue for the third district of New York. He bas been engaged at all times material hereto since 1943 in a business relating to harness race horses. He had bought a number of horses during that period for the purpose of training them, racing them so that each could establish a record and be used profitably for breeding purposes, and then using them for that purpose. His expected income was to come from race prize money, from services of studs and from the sale of yearlings. He had not established his business at the time of the trial to the extent necessary to realize any income from the last two sources but was still trying to obtain, through purchase or breeding, a popular stallion or mare with a record for speed, stamina, and good manners. He sold a race cart in 1947 which had been used in his business. His profit on the sale was $100. He also sold three horses in 1947 for a total of $6,100. Two were stallions and one was a mare. He *90 had purchased them as yearlings, one in September 1944, one in September 1945, and the third in December 1945. Their total cost was $10,700 and $5,612 had been claimed and allowed as depreciation on them. The mare was sold because, through poor handling, she became too lame to be worked. The one stallion was sold because it was in poor health and the other because it had shown no speed. None of those horses had ever established any record. The petitioner had never held any of them primarily for sale to customers in the ordinary course of his trade or business. Each was used in the petitioner's business. The petitioner reported the gains on the sales of the cart and the three horses as ordinary income. The Commissioner made no change in determining the deficiency. The gains were income from the sale of property used in the business. Opinion MURDOCK, Judge: Section 117 (j) (1) defines "property used in the trade or business" and section 117 (j) (2) allows gains from sales of property used in the trade or business, under circumstances here present, to be considered as gains from sales of capital assets held for more than six months. The Commissioner does not mention the cart and *91 no reason appears for doubting that it comes within the definition, so the parties are in disagreement only as to the three horses. The disagreement really relates to the question of what the business included. The Commissioner reasons that the horses were acquired with the hope that they could be used for breeding purposes but with an intention to sell them if they did not prove suitable; they did not prove suitable and were sold without ever having been used for breeding purposes; therefore they were held primarily for sale to customers in the ordinary course of the business and for that reason do not come within the definition. The facts show, however, that the business of the petitioner, as carried on up to and including the taxable year, included the training and racing of his horses in order to establish records which might make them valuable as breeding stock. The Commissioner does not argue that these horses were not trained and raced, or, indeed, that they did not win some prize money. He merely argues that they were never accepted and used as a part of the petitioner's breeding stock. That was not necessary since the horses were actually used in other related phases of *92 the petitioner's business. They were regarded as poor assets of that business and were sold, but they never were held primarily for sale to customers of the petitioner's business. Section 117 (j) (2) applies and the gains must be treated as gains from sales of capital assets held for more than six months. Cases such as a , affirmed , (July 31, 1952), cited by the Commissioner, involving cattle and pigs, are distinguishable from this case. There one recognized phase of the business was raising some animals for sale as beef or pork. Any particular animal not eventually placed in the breeding herd was held for sale primarly to customers in the sales business and was never used in any way in the business of building a breeding herd. Here the horses were not trained and raced as a part of a horse-selling business but as a part of the integral indivisible business of the petitioner of owning, training, racing, and breeding race horses. They were not held and sold to customers of that business. Cf. ; ; . *93 Decision will be entered under Rule 50.